Thomas J. Nolan, Esq. (SBN: 48413)

 **Nolan, Armstrong & Barton, LLP**

600 University Ave. \ Palo Alto, Ca. 94301

Tel.  (650) 326-2980  Fax (650) 326-9704

Philip C. Bourdette SBN #47492
BOURDETTE & PARTNERS
2924 West Main Street
Visalia, CA 93291
(559) 625-8425
Fax (559) 625-8491

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| McAFEE, INC, a Delaware corporation, formerly known as Network Associates, Inc., d/b/a Network Associates, Inc., ) <br><br> Plaintiff, ) <br> v. ) <br><br> TERRY W. DAVIS, ) <br><br> Defendant. ) | Case No. C07 03529 RMW, RS <br> DEFENDANT'S ANSWER AND <br> COUNTER CLAIM FOR BREACH OF <br> CONTRACT <br><br> **JURY TRIAL DEMANDED** |

## FIRST DEFENSE

The complaint fails to state a claim against defendant upon which relief can be granted.

1

## SECOND DEFENSE

Plaintiff has engaged in conduct and activities with respect to the activities which are the subject of the Complaint and by reason of said activities and conduct is estopped from asserting any claim for damages or seeking any other relief against Defendant.

## THIRD DEFENSE

Plaintiff has engaged in conduct and activities sufficient to constitute a waiver of any alleged breach of contract as alleged in the Complaint.

## FOURTH DEFENSE

Plaintiff did not comply with the written terms and conditions of the contract and Plaintiff's claims are barred and/ or should be reduced.

## FIFTH DEFENSE

Plaintiff excused defendant's performance under the contract.

## SIXTH DEFENSE

Plaintiff acted with unclean hands regarding the matters alleged in the Complaint (CCC § 3517).

## SEVENTH DEFENSE

Defendant admits the allegation contained in paragraphs 2, 3, 4, 5, 8, 9 A-E, and 10 of the complaint; alleges that he is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 1, 6, 7 of the complaint; and denies each and every other allegation contained in the complaint.

## EIGHTH DEFENSE

2

The right of action set forth in the complaint did not accrue within four years next before the commencement of this action (CCP § 337 and other limitation periods for the State of California).

## COUNTERCLAIM

### (Breach of Contract against Plaintiff)

1. On or about February 15, 2002 Plaintiff entered into a "Sabbatical" contract with Defendant.

2. The terms and conditions of the contract are set forth in Exhibit A to this Answer and Counterclaim as though fully set forth herein.

3. The contract provided "Upon satisfactory completion of all assigned tasks as determined by the General Counsel and as further consideration for the release of claims discussed below, the Company is prepared to release 50% of the principal associated with the loan between you and Network Associates". Plaintiff has not given Defendant his bonus pursuant to this paragraph of the contract.

4. Defendant has fully performed all terms and conditions that he was required to perform under the contract.

5. Plaintiff's breached the contract by terminating the contract on or about April 24, 2002 without good cause and failed to abide by the terms and conditions of the contract.

6. As a direct and legal result of the foregoing Defendant has been damaged in an amount according to proof at trial but no less than the amount alleged by Plaintiff to be owed to it, together with costs interest and attorneys fees provided for under the agreement.

## PRAYER FOR RELIEF

1. For damages according to proof at trial.

2. For reasonable attorneys' fees.

3

3.  For all costs and expenses of suit herein incurred.

4.  For such other and further relief as this Court may deem just and proper.


Dated:  July 30, 2007            NOLAN, ARMSTRONG & BARTON LLP



BY: *Thomas J. Nolan/srs*

THOMAS J. NOLAN

Pleading

4

# EXHIBIT
# A


Who's watching your network

PERSONAL & CONFIDENTIAL

February 15, 2002

Terry W. Davis
5274 Manderston Drive
San Jose, CA 95138

Dear Terry:

As a benefit to you, Network Associates is prepared to offer you a sabbatical beginning February 16, 2002 and ending February 15, 2003 (the Sabbatical Period). This letter confirms the terms of this opportunity

### Sabbatical Activities

The Sabbatical Period it is intended to provide time to focus on an initiative of your choosing and to support Network Associates as needed. You will be relieved of your regular duties during the Sabbatical Period, you should return all company property and you should not report to the NAI offices unless requested to do so by the General Counsel. Should your initiative match any of the employee benefits offered by NAI, such as the education benefit, such benefit will be available to you in connection with the initiative of your choosing. You may not be employed with any other employer during the Sabbatical Period. Although NAI anticipates that you will have the majority of the Sabbatical Period to pursue activities of your choosing (within the limits of your obligations to NAI), you will be expected to be available to provide services, support and cooperation to NAI during the Sabbatical Period from time to time as requested. During the Sabbatical Period, you will receive work direction from the General Counsel Kent Roberts and provide services in support of any pending issues prior to 2001 or other projects as assigned. Such assistance may require full time effort by you during the Sabbatical Period. NAI will attempt to provide reasonable advance notice of any requested services, however, you should coordinate any periods of anticipated absence or unavailability with NAI, as you would as a regular, full-time employee. At the conclusion of your Sabbatical Period, your employment with NAI will terminate.

### Timing of Paychecks and PTO

During the Sabbatical Period you will remain an employee of Network Associates and continue to accrue Paid Time Off (PTO) and receive your current base salary less applicable taxes according to the Company's standard payroll practices. You will not be eligible to participate in the non-sales incentive plan. You may request changes to your voluntary deductions; otherwise, they will remain the same.

### Bonus Upon Satisfactory Completion of Sabbatical

Upon satisfactory completion of the Sabbatical Period and the satisfactory completion of all assigned tasks as determined by the General Counsel, and as further consideration for the release of claims discussed below, the Company is prepared to release 50% of the principal associated with the loan between you and Network Associates.

### Stock

During the Sabbatical Period vesting of stock options will continue subject to the terms and conditions of all applicable stock option plans and agreements. As of February 15, 2003 all further vesting will cease and you will have 90 days in which to exercise your vested stock options. For stock related issues, please contact the NAI Stock Administrator at (408) 346-3934.

### Deadline for submission of signed Release

Upon receipt of the attached signed release of claims, NAI will provide you the benefits associated with the Sabbatical Period. In order to receive the sabbatical terms described herein, you must sign and return one copy of the attached Release of Claims on or before February 22, 2002. The purpose of the Release is to establish an agreement between you and Network Associates that you will not pursue any claims against Network Associates, Inc. and will not hold Network Associates liable in any adverse legal action. If you have any questions regarding the Release, we encourage you to seek legal assistance. If Network Associates does not receive a copy of the Release of Claims signed by you on or before February 22, 2002 you will not receive any of the benefits provided by the Release of Claims and your employment will terminate on February 15, 2002. Please forward the signed copy of your Release of Claims confidentially to Sylvia Garcia-Lechelt in the Human Resources Department.



Who's watching your network

Additionally within five (5) days of the following dates, please sign and forward to Sylvia Garcia-Lechelt the attached Release Extensions:

June 30, 2002
December 31, 2002
February 15, 2003

### Medical / Dental Plans
If you are presently participating in the Company health plans, you will continue to be covered throughout the Sabbatical Period until February 28, 2003; thereafter, you may elect to purchase continued group health coverage at your own expense in accordance with COBRA. If you fail to make timely payments, your COBRA will stop and you will lose health coverage.

### 401(k)
Your contributions to the 401(k) Plan will cease as of February 15, 2002. Information regarding your 401(k) plan account (if you are participating) will be forwarded to you separately.

### Life Insurance
Your life insurance will continue during the Sabbatical Period, thereafter, you have the option to convert your life insurance to an individual policy. You have 31 days from the date your life insurance terminates with NAI to apply for an individual policy.

### Employee Inventions and Proprietary Rights:
Please keep in mind that you have continuing obligations under the Employee Inventions and Proprietary Rights Assignment Agreement that you signed when you joined Network Associates. Your obligations under the agreement are ongoing and extend through the Sabbatical Period and past the termination of your employment with Network Associates.

### Employment Status
By providing this sabbatical, NAI is not altering the at-will status of your employment.

Finally, the terms of this sabbatical arrangement are confidential and should not be disclosed to anyone other than your lawyer, tax or financial consultants with a need to know. .

Sincerely,

Stephen C. Richards
COO and Chief Financial Officer

I accept the terms of the sabbatical outlined above.

Terry W. Davis


network
A S S O C I A T E S
Who's watching your network

## RELEASE OF CLAIMS

This Release is signed as of this 14 day of ___FEBRUARY___, 2002 (the "Effective Date") by and between Networks Associates, Inc. a Delaware corporation (NAI) and me "Terry W. Davis." For purposes of this Agreement, the term "the Company" shall mean NAI and its majority-owned direct and indirect subsidiaries.

1.       I elect to participate in a Sabbatical for the period February 16, 2002 through February 15, 2003 (Sabbatical Period).  I will continue on payroll through the Sabbatical Period, upon signing and returning this Release of Claims and the periodic Release Exensions.  I understand that if I do not sign and return this Release of Claims, my termination date will be February 15, 2002.  After February 15, 2002, I will not be entitled to any rights under any employee benefit program of the Company, other than to the extent described herein or provided in such program with respect to employees whose employment is terminated or as required by law.

2.       In exchange for the benefits described in Paragraph 3 hereof and offered to me by the Company, I (on behalf of myself and my successors and assigns) hereby release the Company and the officers, directors, employees, stockholders, and legal successors and assigns of the Company from all claims, actions and causes of action, whether now known or unknown, which I now have, or at any other time had, or shall or may have against those released parties based upon or arising out of any matter, cause, fact, thing, act or omission whatsoever occurring at any time up to and including the Effective Date, including, but not limited to, any claims for breach of express or implied contract, breach of fiduciary duty, wrongful termination, fraud, defamation, infliction of emotional distress, discrimination based on national origin, race, age, sex, sexual orientation, disability or other discrimination or harassment under the Civil Rights Act of 1964, the Age Discrimination In Employment Act of 1967, the Americans With Disabilities Act, the California Fair Employment and Housing Act the California Labor Code, federal and state securities laws and rules promulgated thereunder, or any other applicable local, state or federal law.  To the fullest extent permitted by law, I agree that I will not file any lawsuit or other legal proceeding to assert any such claims.  I further acknowledge that I have been paid all wages earned by me through the Effective Date.

         As further consideration for the benefits described in Paragraph 3 below, within five (5) days of the following dates, I agree to sign and deliver to the Company the Release Extension set forth on the last page of this Release of Claims.
         June 30, 2002
         December 31, 2002
         February 15, 2003

3.       Beginning on the Effective Date, the Company will begin to pay or provide me with the following benefits in exchange for the release contained in Paragraph 2:

         (a) continuation of base salary for the period February 16, 2002 through February 15, 2003, less applicable withholding;

         (b) with respect to any stock options granted to me, I will continue vesting through February 15, 2003; all other respects, my stock options shall remain subject to the terms and conditions of any previous stock option plans or agreements between me and Network Associates Inc.;

         (c) continuation of medical, dental and life insurance plans through the Sabbatical Period; and

         (d) upon satisfactory completion of all duties and at the end of the Sabbatical Period, forgiveness of 50% of the indebtedness owed to Network Associates.



Who's watching your network

4.      I acknowledge that I have read section 1542 of the Civil Code of the State of California which, in its entirety, states:

A general release does not extend to claims, which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

I waive any rights that I have or may have under such section 1542 to the fullest extent that I may lawfully waive such rights pertaining to this Release of Claims.  If I am employed by the Company in a state other than California, I hereby waive any right or benefit which I have under the other state's statutes similar to section 1542 of the Civil Code of the State of California to the full extent that I may lawfully waive such rights pertaining to this Release of Claims.

I acknowledge that I have carefully read and fully understand this release and I have not relied on any statement, written or oral, which is not set forth in this document.  I have consulted with an attorney, or understand that I should consult with an attorney, before signing this agreement, and that I am giving up any legal claims I have or may have against the company by signing this agreement.  I also understand that I may take up to 21 days to decide whether to enter into this agreement, and that I may revoke this agreement within 7 days of signing it, if I wish to do so.  I enter into this agreement knowingly, willingly and voluntarily in exchange for the benefits described herein, and I have had an adequate opportunity to make whatever investigation or inquiry he/she deems necessary or desirable in connection with the matters addressed in this agreement. I understand the company is not obligated to pay me the benefits described in paragraph 3. I further acknowledge that I am signing this release of claims knowingly, willingly and voluntarily in exchange for the benefits set forth in paragraph 3 above.

6.      I further agree that during the Sabbatical Period, I will not, directly or indirectly, on my own behalf or on behalf of any person, firm or corporation within the US engage in or participate in any business, as an employee, consultant, director, contractor or otherwise which is competitive with the Company.

7.      I acknowledge that I have continuing obligations under any confidentiality and assignment of inventions agreement I may have signed in favor of the Company or under applicable law, which obligations will not be affected or impaired in any way by this Release of Claims.

8.      I acknowledge that as a condition of receiving the benefits described in paragraph 3, I have returned to the Company on or before the _ffective Date, all Company property in my possession, including but not limited to, software, equipment, documents, etc.

9.      I agree not to disclose the terms of this Release of Claims, including the terms of the sabbatical provided to me, to anyone [[other than my spouse], except as such disclosure may be required for tax or financial reporting purposes or as otherwise may be required by law or to carry out the terms of this Release of Claims.

10.     I agree that this Release of Claims may not be modified or amended unless such modification or amendment is in writing and is signed by me and by an authorized officer of Network Associates, Inc.

Network Associates, Inc.                          Employee Signature and Date

_____                          _____
Signature of                                       Signature of Terry Davis